UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ALAN B. EICKHOFF**, | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| vs. | ) |
| | ) |
| **CITY OF FERGUSON** and | ) JURY TRIAL DEMANDED |
| **DELRISH MOSS** | ) |
| **(in his official & individual personal capacities)**, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

Comes now plaintiff Alan B. Eickhoff ("plaintiff") and for his claims against defendant City of Ferguson ("the City") and defendant Delrish Moss ("defendant Moss") (collectively referred to as "defendants"), states:

JURISDICTION AND VENUE

1. This is an action under: (1) the Civil Rights Act of 1991, 42 U.S.C.§§1981 *et seq.*, as amended ("§1981"), (2) the Civil Rights Act of 1866, 42 U.S.C. §§1983*, et seq.,* as amended ("§1983"); (4) Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§2000e *et seq.,* as amended ("Title VII"); and (5) the Missouri Human Rights Act, §213.055 & §213.111, RSMo. ("MHRA") — to correct unlawful employment practices and discrimination because of race, and to provide appropriate relief to plaintiff who was adversely affected by such practices.

2. Subject matter jurisdiction of this Court over the federal questions presented under §1981, §1983, and Title VII is invoked pursuant to 28 U.S.C., §§1331

1

and 1343. This Court has supplemental jurisdiction over plaintiff's claims arising under the MHRA pursuant to 28 U.S.C.§1367(a) because these claims are so related to plaintiff's claims under federal law that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Missouri, Eastern Division.

## PARTIES

4 Plaintiff is a Caucasian male, and is a resident of St. Louis County, Missouri.

5. The City is a municipal corporation organized and existing under the laws of the State of Missouri.

6. Defendant Moss is an African-American male, a resident of the State of Florida, and at all times mentioned herein was the Chief of Police of the City and plaintiff's appointing authority during the dates in question; and defendant Moss is being sued in his official and individual personal capacities as expressly set forth below with particularity.

## STATEMENT OF CLAIMS

7. Plaintiff worked under contract for defendant City for approximately 4 years and held the title of Assistant Police Chief.

8. Approximately one week following his appointment as assistant police chief, plaintiff, along with the other employees of the Ferguson Police Department, were met with the unprecedented challenge of dealing with the aftermath of the highly publicized police shooting of Michael Brown and the subsequent protests and civil unrest that followed these events.

9.      In the aftermath of these events, there <u>were substantial</u> policy changes and employee turnover at the Ferguson Police Department, including the appointment of a new Police Chief, Defendant Moss, in March 2016.

10.     Following the appointment of Defendant Moss, plaintiff began noticing disparate treatment towards subordinate employees regarding the investigation into allegations of policy violations or misconduct by employees and the resulting administration of discipline (or lack thereof) that was clearly motivated by the race of the employees involved.

11.     In approximately May 2018, Captain Dennis McBride ("McBride"), a Caucasian employee of the Ferguson Police Department at that time, brought his concerns to the HR manager JoAnn Spencer ("Spencer"), an African-American female, about the racially based hostile work environment and discriminatory treatment of Caucasian employees that he and others had observed within the police department.

12.     McBride reported that complaints made against African-American officers were not being investigated or forwarded to HR for review, and instead would remain with Defendant Moss and never processed.

13.     McBride also reported that complaints made against white officers were always being forwarded to HR, were being investigated thoroughly, and discipline was being administered.

14.     In response to this, Spencer sought an explanation from Defendant Moss, and Defendant Moss falsely blamed plaintiff for the complaints not being forwarded to human resources for investigation and processing.

15.     Plaintiff had actually prepared a written reprimand for an African-American

3

employee who had been insubordinate and forwarded it to Defendant Moss for approval; however, Defendant Moss intentionally prevented the complaint against this officer from proceeding.

16. Defendant Moss also prepared a fraudulent written reprimand for plaintiff on the basis that plaintiff was responsible for the failure to process the investigations of alleged misconduct by black employees.

17. McBride informed Plaintiff that he had been blamed by Defendant Moss as a pretext for defendant Moss' discriminatory practices and, in response, Plaintiff met with Spencer to report his own observations of a hostile work environment and discriminatory practices.

18. Plaintiff reported numerous instances wherein Defendant Moss gave preferential treatment to employees on the basis of race, including numerous incidents in which African American officers received more favorable treatment than Caucasian officers in discipline, promotions, and desirable duty assignments from Defendant Moss.

19. Following the meeting with Human Resources, there was no follow up investigation or inquiry made regarding the hostile work environment and discriminatory practices within the Ferguson Police Department, no training on racial bias or sensitivity, no informal efforts to address the issues that were reported or a meeting with all parties involved to discuss the complaints of discrimination.

20. Later in May 2018, Captain McBride was informed his job had been eliminated after 42 years of service and was given a choice of retiring or being terminated.

21. This action was in retaliation for McBride reporting incidents of racial discrimination and a hostile work environment in the department by Defendant Moss.

22. The same week after McBride was terminated, Commander Frank McCall, an African American male, was promoted to Assistant Police Chief, the same rank as plaintiff, a position plaintiff had been informed by former City Manager DiCarlon Seewood would be completely eliminated after plaintiff finally left his position because the Ferguson Police Department was too small to have an assistant chief.

23. At the same time that McBride was terminated and immediately following the promotion of McCall, defendant Moss began excluding plaintiff from decision-making meetings with other highly ranked officers in both the conference room and defendant Moss' office.

24. Prior to plaintiff's complaint to HR, it was mandatory that plaintiff attend these meetings.

25. On August 7, 2018, plaintiff attempted to enter into the meeting room where a meeting with the senior staff was taking place and he was told by defendant Moss to leave the room without any further explanation.

26. During the time period of May 2018 to August 2018, defendant Moss deliberately prevented plaintiff from participating in disciplinary investigations of officers and staff under his command.

27. However, defendant Moss also threatened plaintiff with discipline on numerous occasions based upon the conduct and performance of those same employees under plaintiff's and defendant Moss' command.

28. In response, plaintiff repeatedly requested that he be permitted to participate in and have material knowledge of the investigations of staff members under his command; however, defendant Moss repeatedly refused to provide a response or to

share the information from the investigations with plaintiff.

29. During this same time period, all as the result of defendant Moss' decisions, McCall participated in all meetings with the chief and other high ranking staff, was integrated into material policy and decision-making, and was given preferential treatment as compared to plaintiff regarding the assignment of staff under his command.

30. On August 9, 2018, plaintiff was stationed at the Ferguson Market where there were approximately 125 protesters present engaging in a peaceful protest. During the protests, defendant Moss called plaintiff from his residence and gave an order to physically remove the protesters off of the parking lot.   Plaintiff informed defendant Moss there was no criminal activity going on and that an attempted removal of the protesters would only escalate tensions. Defendant Moss responded to the scene with the City Manager who agreed with plaintiff and instructed defendant Moss not to clear the protesters.

31. The following day, on the anniversary of the shooting death of Michael Brown by an officer of the Ferguson Police Department, plaintiff was assigned to be in charge of managing the expected protests and marches in the Ferguson community.

32. Plaintiff attempted to contact defendant Moss six or seven times to request extra officers be assigned to help manage the expected protests that evening and his calls were ignored by defendant Moss (Captain DeCarli, McCall, and defendant Moss were all working that day).

33. Plaintiff finally reached defendant Moss by telephone, and Moss only stated that he was busy and refused to participate or give orders for how the anticipated protests would be handled.

34. Defendant Moss deliberately refused to participate with the intent to shift all blame and responsibility to plaintiff for any incidents that may have transpired that reflected unfavorably on the department, yet refused to grant plaintiff the authority to take actions on his own in order to secure the safety of the protesters, police employees, and other bystanders.

35. Due to his race and plaintiff's unwillingness to support discriminatory conduct and maintain a hostile work environment, plaintiff was discriminated against, retaliated against, and subjected to a harassing and hostile work environment by defendant Moss and by the City of Ferguson.

36. Defendants' treatment of plaintiff and other employees of plaintiff's race was so severe or pervasive that it caused a hostile, abusive, or intimidating work environment and plaintiff's continued employment was dependent upon his enduring the unwelcome conduct.

37. The effects of this retaliation and hostile work environment resulted in severe anxiety, stress, and other health issues for plaintiff.

38. Ultimately plaintiff filed his resignation effective July 1, 2019 as a result of the retaliation and hostile work environment and the City of Ferguson's refusal to intervene and take steps to prevent future discriminatory conduct against plaintiff and other staff.

39. Defendants *constructively discharged* plaintiff, in that: (1) a reasonable person in plaintiff's position would have found his working conditions – including but not limited to repeated pervasive acts of hostility based on race and repeated acts of retaliation against plaintiff for reporting pervasive bias and discriminatory conduct by

senior staff to defendants – to be intolerable; (2) such conditions were created by defendants' actions, as alleged above, which were motivated by defendants' intent to discriminate against plaintiff because of his race, *and/or* but for the plaintiff's race, defendants would not have taken those actions; and (3) defendants' acted with the intent of forcing plaintiff to retire, quit or resign, and plaintiff's resignation was a reasonably foreseeable result of the defendants' actions.

40. After constructively discharging plaintiff, defendants permanently replaced plaintiff with an African-American employee.

41. As a proximate result of defendants' conduct, plaintiff has lost, and will continue to lose, compensation and benefits of employment, including but not limited to the loss of income and benefits; and has, and will continue to, suffer emotional pain, physical ailments, humiliation, embarrassment, mental anguish, and loss of enjoyment of life.

42. Defendants' actions were intentional, willful, wanton, malicious and/or outrageous because of their evil motive and/or reckless indifference to the rights of plaintiff under §1981, §1983, Title VII, and the MHRA, entitling plaintiff to punitive damages.

43. As a proximate result of defendants' conduct, plaintiff does not have an adequate remedy at law and is entitled to equitable relief, including a permanent injunction, declaratory judgment, reinstatement and back pay, and/or front pay.

44. As a proximate result of defendants' conduct, plaintiff has incurred and will continue to incur reasonable attorney's fees and costs in the prosecution of his race discrimination claims.

## COUNT I:   TITLE VII -- WRONGFUL (CONSTRUCTIVE) DISCHARGE
### {Against the City}

45. Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 43 as if set forth in full herein.

46. Defendant Moss, acting within the scope and course of his employment by the City, and the City constructively discharged plaintiff as set forth above in paragraphs 37 & 38.

47. Plaintiff's race was a motivating factor or played a part in defendants' wrongful (constructive) discharge of plaintiff.

48. On March 7, 2019, plaintiff timely filed charges of discrimination (within 300 days of defendants' last act of discrimination) with the Equal Employment Opportunity Commission ("EEOC") alleging that defendants wrongfully and illegally terminated his employment because of his race; and opened its file number 560-2018-02840; and on January 16, 2021, the EEOC issued plaintiff a right-to-sue letter; and plaintiff has met all procedural prerequisites for bringing his claims under Title VII.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against the City, to include the following:

A. To declare that the rights of plaintiff under Title VII have been violated by the acts and practices of the City as alleged hereinabove;

B. To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of police, human resources director and its City Manager, from engaging in

      any employment practice which discriminates against persons because of their race, in violation of Title VII, including plaintiff;

C.    To order the City to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D.    To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of the City's unlawful acts, together with pre-judgment and post-judgment interest;

E.    To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F.    To award plaintiff such sums as permitted by law as and for punitive damages;

G.    To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H.    For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

      COUNT II:   TITLE VII – RETALIATION {Against the City}

49.    Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 48 as if set forth in full herein.

50.    Plaintiff complained to defendant Moss and to the City that plaintiff was being harassed and discriminated against on the basis of race.

51. Plaintiff reasonably believed that he was being harassed and discriminated against on the basis of race.

52. Defendants constructively discharged plaintiff.

53. Plaintiff's constructive discharge might well dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

54. Defendants would not have constructively discharged plaintiff but for plaintiff's complaint of race harassment and discrimination.

55. On March 7, 2019, plaintiff timely filed charges of discrimination (within 300 days of defendants' last act of discrimination) with the Equal Employment Opportunity Commission ("EEOC") alleging that defendants wrongfully and illegally retaliated against him in his employment because of his race; and opened its file number 560-2018-02840; and on January 16, 2021, the EEOC issued plaintiff a right-to-sue letter; and plaintiff has met all procedural prerequisites for bringing his claims under Title VII.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against the City, to include the following:

A. To declare that the rights of plaintiff under Title VII have been violated by the acts and practices of the City as alleged hereinabove;

B. To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of police, human resources director and its City Manager, from engaging in any employment practice which discriminates against persons because of

11

their race, in violation of Title VII, including plaintiff;

C. To order the City to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D. To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of the City's unlawful acts, together with pre-judgment and post-judgment interest;

E. To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F. To award plaintiff such sums as permitted by law as and for punitive damages;

G. To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H. For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

### COUNT III:   TITLE VII – HARASSMENT/HOSTILE WORK ENVIRONMENT
{Against the City}

56. Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 55 as if set forth in full herein.

57. Plaintiff was subjected to the harassment and hostile work environment as alleged with specificity hereinabove.

58. Such conduct was unwelcome.

59. Such conduct was based upon plaintiff's race.

60. Defendant ultimately wrongfully (constructively) discharged plaintiff from his employment as alleged with specificity hereinabove.

61. Plaintiff's rejection and/or failure to submit to such conduct was a motivating factor in the decision to discharge plaintiff.

62. On March 7, 2019, plaintiff timely filed charges of discrimination (within 300 days of defendants' last act of discrimination) with the Equal Employment Opportunity Commission ("EEOC") alleging that defendants harassed plaintiff and created a hostile work environment against him in his employment because of his race; and opened its file number 560-2018-02840; and on January 16, 2021, the EEOC issued plaintiff a right-to-sue letter; and plaintiff has met all procedural prerequisites for bringing his claims under Title VII.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against the City, to include the following:

A. To declare that the rights of plaintiff under Title VII have been violated by the acts and practices of the City as alleged hereinabove;

B. To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of police, human resources director and its City Manager, from engaging in any employment practice which discriminates against persons because of their race, in violation of Title VII, including plaintiff;

C. To order the City to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D. To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of the City's unlawful acts, together with pre-judgment and post-judgment interest;

E. To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F. To award plaintiff such sums as permitted by law as and for punitive damages;

G. To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H. For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

COUNT IV -- §1983
{Against the City and Defendant Moss in his Official and Individual Personal Capacities}

63. Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 62 as if set forth in full herein.

64. Defendant Moss, acting within the scope and course of his employment by the City, and the City, repeatedly created and maintained a racially biased hostile work environment, and constructively discharged plaintiff as set forth above in paragraphs 37 &

38.

65.     Plaintiff's race was either (a) a motivating factor or played a part in defendants' decisions to repeatedly place him on forced leave and/or to discharge plaintiff, or (b) a determining factor in defendants' decisions to thereby discriminate against him.

66.     Such action constituted a violation of plaintiff's *clearly established* rights to equal protection of the laws and to due process of law under the 14th Amendment to the U.S. Constitution and Title VII.

67.     Defendant Moss's discriminatory conduct as set forth above with particularity was committed in his capacity as plaintiff's appointing authority and under Missouri law, which further constituted acts representing and executing the City's official policies.

68.     In illegally discriminating against plaintiff as alleged with particularity above, defendants were acting under color of state law.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against both defendants Moss, *in both his official and individual personal capacities*, and the City, to include the following:

A.      To declare that the rights of plaintiff under the 14th Amendment to the U.S. Constitution and Title VII have been violated by the acts and practices of defendants as alleged hereinabove;

B.      To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of

police, human resources director and its City Manager, from engaging in any employment practice which discriminates against persons because of their race, including plaintiff;

C. To order defendants to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D. To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of defendants' unlawful acts, together with pre-judgment and post-judgment interest;

E. To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F. To award plaintiff such sums as permitted by law as and for punitive damages;

G. To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H. For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

## COUNT V -- §1981
{Against the City and Defendant Moss in his Official and Individual Personal Capacities}

69. Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 68 as if set forth in full herein.

16

70. Defendant Moss, acting within the scope and course of his employment by the City, and the City, repeatedly created and maintained a racially biased hostile work environment, and constructively discharged plaintiff as set forth above in paragraphs 37 & 38.

71. Defendants thereby discriminated against plaintiff *because of* his race; and/or would not have done so *but for* his race.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against both defendants Moss, *in both his official and individual personal capacities*, and the City, to include the following:

A. To declare that the rights of plaintiff under the equal protection clause of the 14th Amendment to the U.S. Constitution and under §1981 have been violated by the acts and practices of defendants as alleged hereinabove;

B. To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of police, human resources director and its City Manager, from engaging in any employment practice which discriminates against persons because of their race, including plaintiff;

C. To order defendants to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D. To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of defendants' unlawful acts, together with

           pre-judgment and post-judgment interest;

E.     To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F.     To award plaintiff such sums as permitted by law as and for punitive damages;

G.     To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H.     For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

## COUNT VI – MHRA {Against the City}

72.    Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 thru 71 as if set forth in full herein.

73.    Defendant Moss, acting within the scope and course of his employment by the City, and the City, repeatedly created and maintained a racially biased hostile work environment, and thereafter retaliated against plaintiff and constructively discharged plaintiff as set forth above in paragraphs 37 & 38.

74.    Plaintiff's race actually played a role in and had a determinative influence on such actions of defendants.

75.    The Missouri Commission on Human Rights ("MCHR") has a statutory work-sharing agreement/relationship with the EEOC; and upon the filing of plaintiff's charge of race, sex/gender and/or age discrimination with the EEOC on March 7, 2019,

the MCHR opened its own file on the foregoing charges under its file number FE-3/19-30276; and on January 26, 2021, the MCHR issued plaintiff a right to sue letter; and plaintiff has met all procedural prerequisites for bringing his claims under the MHRA.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against the City, to include the following:

    A.    To declare that the rights of plaintiff under the MHRA have been violated by the acts and practices of the City as alleged hereinabove;

    B.    To permanently enjoin the City, its officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with the City, including but not limited to the City's chief of police, human resources director and its City Manager, from engaging in any employment practice which discriminates against persons because of their race, in violation of the MHRA, including plaintiff;

    C.    To order the City to reinstate and provide back pay to plaintiff, retroactive to July 1, 2019; or in lieu of reinstatement, to award plaintiff reasonable front pay;

    D.    To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of the City's unlawful acts, together with pre-judgment and post-judgment interest;

    E.    To award plaintiff such sums sufficient to compensate him for his emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

    F.    To award plaintiff such sums as permitted by law as and for punitive

   damages;

G. To award plaintiff his reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs and expenses herein incurred; and

H. For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

      Respectfully Submitted,

      UTHOFF, GRAEBER, BOBINETTE & BLANKE
      *Attorneys for Plaintiff*
      906 Olive Street, Ste. 300
      St. Louis, Mo. 63101
      Phone: (314) 621-9550
      Facsimile: (314) 621-2697
      By: /s/ Paul L. Schmitz
        Paul L. Schmitz, #66885MO
        E-Mail: pschmitz@ugbblaw.com
      By: /s/ Richard B. Blanke
        Richard B. Blanke, #28675MO
        E-Mail: rblanke@ugbblaw.com